UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| EVALINA WALLS, | ) Civil Action No.: 4:13-cv-2551-RBH-TER |
| Plaintiff, | ) |
| -vs- | ) |
| | ) **REPORT AND RECOMMENDATION** |
| DILLON COUNTY DETENTION CENTER, | ) |
| Defendant. | ) |

## I.    INTRODUCTION

Plaintiff brings this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. as well as the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. She also asserts state law claims for defamation and negligent retention and supervision. Presently before the court are Defendant's Motion for Summary Judgment (Document # 20) and Plaintiff's Motion to Amend Complaint (Document # 24).[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  This report and recommendation is entered for review by the district judge.

---

[1]In its motion for summary judgment, Defendant argues that Dillon County Detention Center is not a proper Defendant because it is not a separate legal entity, but rather a part of the Dillon County Sheriff's Office.  Nevertheless, it argues that, even if Defendant had been properly identified as the Dillon County Sheriff's Office, summary judgment is still appropriate. Following the motion for summary judgment, Plaintiff filed a motion to amend her complaint to add Dillon County Sheriff's Office as a Defendant.  However, for the reasons discussed herein, allowing Plaintiff to amend her complaint to add Dillon County Sheriff's Office would be futile because summary judgment is appropriate as to both Dillon County Detention Center and Dillon County Sheriff's Office.  Therefore, it is recommended that Plaintiff's motion to amend be denied.

## II.     FACTS

Plaintiff is a 51 year old woman who was employed by the Dillon County Sheriff's Office at the Dillon County Detention Center (detention center) from July 27, 2000 until her employment was terminated on November 26, 2012, for "misconduct in office." Pl. Dep. 9, 18, 59; Notice of Termination (Ex. 11 to Pl. Dep.). Plaintiff was initially employed as a detention officer (also referred to as a correctional officer), and her duties involved all aspects of guarding individuals detained at the detention center. Pl. Dep. 17, 19. On October 5, 2007, Plaintiff was promoted to the position of sergeant and given a pay increase. Pl. Dep. 21-22 (Ex. to Def. Motion). The detention center's administrator, Captain Johnny Sapp, made the decision to promote Plaintiff and give her a raise. Pl. Dep. 22; Promotion and Pay Raise Note (Ex. 5 to Pl. Dep). Following Plaintiff's promotion to sergeant, she supervised five detention officers. Pl. Dep. 22.

On November 7, 2012, Plaintiff asked another sergeant, Annie Floyd, if Plaintiff could work the evening shift Floyd supervised. Pl. Dep. 27-28.[2] Scheduled to work that evening was Tashana Brown, a 33 year old woman employed as a detention officer, a position subordinate to Plaintiff's. Pl. Dep. 23-24. Plaintiff testified she had known Brown for several years, Brown had dated her son, Brown had stayed at her home, she considered Brown to be a personal friend, and Brown regularly referred to her as "mom." Pl. Dep. 24-25.

On November 9, 2012, Tashana Brown reported to detention center management that Plaintiff sexually harassed her during the November 7-8, 2012 shift. Sapp Aff. ¶ 5 (Ex. to Def. Motion). Captain Sapp and Dillon County Risk Manager, Winna Miller, interviewed Brown on

---

[2]Plaintiff testified that her brother died earlier that year and she asked to take the extra shift to avoid being home alone. Pl. Dep. 28.

November 15, 2012. Brown Statement (Ex. 6 to Pl. Dep.). Brown reported to Captain Sapp and Miller that Plaintiff made increasingly sexually explicit comments to her on multiple occasions throughout the evening shift. Employee Statement. Specifically, Brown reported that Plaintiff greeted Brown by saying "Hey baby give me a hug" and she and Brown hugged. Plaintiff played with Brown's hair and said Brown's hair was pretty. Plaintiff asked Brown to go into the property room with her because Plaintiff needed to discuss something with Brown. Plaintiff told Brown that Plaintiff had watched a pornographic movie with two women in it, asked Brown if Brown ever wanted to have sex with another woman. Brown told her no. Plaintiff told Brown that Plaintiff fantasized about having sex with another woman and "wanted to eat this person out." Brown attempted to leave the room, but Plaintiff stopped her and asked Brown if she wanted to know about whom she was fantasizing. Brown told her no, but Plaintiff said "I can eat you right here on this table." Brown left the property room feeling sick and spoke to detention officers Lewis, Dudley and Evans about how Plaintiff had made her uncomfortable. Brown Statement.

Approximately an hour later, Brown went to the booking room and Plaintiff was there. She said she had a crush on Brown and should not have introduced her to her son. When Brown began to leave the booking room, Plaintiff asked Brown what Brown would do if Plaintiff put her hands between Brown's legs. Plaintiff left the room. Brown Statement.

Later, Plaintiff called Brown over the intercom to return to the control room and Plaintiff asked Dudley to go with her. When they arrived at the control room, Sergeant Floyd told Dudley to get something and they both left the room. Plaintiff told Brown that she "might as well give her that because she always gets what she wants." Plaintiff again asked Brown if she would do anything if Plaintiff put her hands between Brown's legs. Brown put her head down and made no comment.

Plaintiff asked Brown about her plastic surgery and Brown gave her the number of her surgeon. Plaintiff asked Brown if Brown knew where Plaintiff could purchase sex toys and Plaintiff gave her the names of some places. The subject changed to some furniture Plaintiff had for sale, but Plaintiff stated she wanted to get back to Brown and said "I want you and want to make you come multiple times" and "come here, let me touch your titties." Brown covered her breasts and said no. Plaintiff said she had considered asking a man to join in having sex with Plaintiff and Brown, but decided against it because Plaintiff wanted Brown all to herself. Plaintiff said she had been trying to get Brown to her house and again asked Brown if she was going to let Plaintiff "eat her." At that time, others came into the room and Brown left with them. Brown Statement.

At some point Plaintiff told Sergeant Floyd about Plaintiff's conduct and Floyd told her that Captain Sapp would not do anything. During the interview, Captain Sapp acknowledged that the above statement was the same as the one that Brown told him when she first reported the conduct. Brown Statement.

Captain Sapp and Miller also interviewed Sergeant Floyd and detention officers Dudley and Miller. Sergeant Floyd confirmed that Plaintiff and Brown were alone at various times during the shift. Floyd Statement (Ex. 7 to Pl. Dep.). Dudley stated that Brown told him that she and Plaintiff and Floyd were talking about sex and Plaintiff and Floyd were talking about sex with women and Brown wanted to go home. Brown told him that Plaintiff had approached her and she was scared. Brown asked Dudley to go with her to the control room and nothing was said while he was in there. Dudley Statement (Ex. 8 to Pl. Dep.). Evans stated that Brown came into the break room with him and Dudley and Lewis and state that Plaintiff was talking about sex and Brown wanted to go home. Later in the morning, Brown told him that Plaintiff asked her about having sex and Plaintiff called

Brown back into the control room. Evans stated that Brown was really upset and did not like it and tried to stay around "us" most of the night. Evans Statement (Ex. 9 to Pl. Dep.).

Sapp and Miller also interviewed Plaintiff. Plaintiff argues that Miller's notes of the interview are not accurate and Miller falsified Plaintiff's responses because she was friends with Sapp and Brown's husband. Pl. Dep. 63-65. Plaintiff also stated that Miller had trouble hearing her. Pl. Dep. 70-71. She refused to sign the statement. Pl. Dep. 48. According to Miller's notes, Plaintiff admitted to talking about sexual things with Brown and that Brown told her about her breast augmentation and "tummy tuck" and that Brown used to sell adult toys and could get Plaintiff some adult toys. When asked if Plaintiff asked Brown to have sex with her, Plaintiff stated, "the conversation continued and she could have left at any time." When Captain Sapp told Plaintiff that Brown accused Plaintiff of propositioning her, Plaintiff responded, "I said she was nice looking." When asked if she offered to feel Brown's breast, Plaintiff responded, "I do not remember." When asked again if she asked Brown to feel her breast, Plaintiff stated "she could have left at any time." Plaintiff stated that Brown responded to her by laughing and putting a paper up to her face. Plaintiff Statement (Ex. 10 to Pl. Dep.).[3]

Although he acknowledged that no one else heard the conversation Brown alleged to have

---

[3]In her deposition, Plaintiff admitted to hugging Brown and telling her that her hair looked good. Pl. Dep. 30. She admitted to telling Brown she needed to talk to her about something but that it was about a previous conflict Plaintiff and Brown had regarding Brown's ex-husband and not about Plaintiff's sexual feelings towards Brown. Pl. Dep. 31-32. Plaintiff admitted talking to Brown about sex toys, but stated that Brown initiated the conversation. Pl. Dep. 35. Plaintiff admitted to calling Brown over the intercom to take over her seat so Plaintiff could take a break. Pl. Dep. 37. Plaintiff admitted to talking to Brown about her plastic surgery but that they did not go into details about the surgery. Pl. Dep. 37-38. Plaintiff denied all claims that she talked about sex with another woman or propositioned Brown in any way. Pl. Dep. 29-40.

taken place with Plaintiff, Captain Sapp believed Brown's version of events was accurate based on his interviews of all those involved, his law enforcement experience and expertise, and the fact that Brown's story never changed despite her having been interviewed multiple times. Sapp. Dep. 106; Sapp Aff. ¶ 8. Sapp made the decision to terminate Plaintiff's employment on November 26, 2012. Pl. Dep. 59. Sapp told Plaintiff she was being terminated for violating the detention center's sexual harassment policy. Pl. Dep. 60. Sapp offered to allow Plaintiff to resign in lieu of being terminated, but Plaintiff declined to do so because his offer came later that same day or the day after Sapp initially informed her he had decided to terminate her employment. Pl. Dep. 75-76. Prior to the sexual harassment allegation, Captain Sapp had no disciplinary issues with Plaintiff and she was performing satisfactorily. Sapp Dep. 41-42 (Ex. A to Pl. Response). Following Plaintiff's termination, her position as Sergeant on the D-shift was filled by Annie Floyd, a 51 year old female. Sapp Aff. ¶ 10.

### III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party

must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**IV.   DISCUSSION**

    **A.   Dillon County Detention Center**

As referenced above in footnote one, Defendant argues that the proper party in this action is the Dillon County Sheriff's Office rather than the Dillon County Detention Center. A detention center is not a legally created entity capable of being sued. See, e.g., Tyler v. Sullivan, No. 95–1232, 1996 WL 195295 at *1 (10th Cir. Apr. 22, 1996). Under South Carolina law, county jails are under

the custody of the Sheriff. S.C. Code Ann. §24-5-10. This statute applies equally to detention centers. Roton v. Sparks, 270 S.C. 637, 639, 244 S.E.2d 214, 216 (1978) ("The 'detention center' maintained by Newberry County is the county jail within the meaning of Sections 24-5-10 of the 1976 Code of Laws, and is subject to the supervision of the sheriff."). Therefore, the proper Defendant in this action is the Dillon County Sheriff's Office. Nevertheless, as discussed in footnote one and below, even if the Dillon County Sheriff's Office was added as a Defendant to this action, summary judgment would be appropriate on all of Plaintiff's claims.

### B.     Causes of Action

In the beginning of her Complaint, Plaintiff states "[t]his action is brought to remedy discrimination on the basis of sex and age the terms, conditions and privileges of employment and to remedy retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII") and in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §623(a)(1) et seq. ("ADEA"). This is also an action brought to remedy claims of Defamation." She also alleges that she filed a charge of discrimination based upon sex and age. Comp. ¶ 7. However, in count one, labeled "Title VII," Plaintiff alleges that "Defendant discriminated against Plaintiff because of her race and retaliated against Plaintiff because of her complaints . . . ." Comp. ¶ 13. Defendant noted this in its motion for summary judgment, and indicated that it was likely a scrivner's error, but if not, Plaintiff failed to present sufficient evidence to support either a race discrimination or a retaliation claim. Plaintiff did not confirm in her response that the references to race and retaliation were scrivner's errors and again stated in her response that "this action was brought . . . to remedy retaliation . . ." but did not further discuss race or retaliation or assert any arguments to that end. In addition, although Plaintiff alleged state law causes of action

for defamation and negligent retention and supervision and Defendant moved for summary judgment on these claims as well, Plaintiff did not address them in her response. Thus, it appears that Plaintiff has abandoned her state law claims and, to the extent she asserted race and retaliation claims, she has abandoned those as well. Thus, the only causes of action before the court are sex discrimination under Title VII and age discrimination under the ADEA.

      C.      **ADEA**

Plaintiff's second cause of action alleges a claim for age discrimination under the ADEA. Defendant argues that the proper Defendant, Dillon County Sheriff's Office, has sovereign immunity as to such a claim. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amend. XI. Accordingly, the Constitution does not provide for federal jurisdiction over suits against nonconsenting States, unless the state's eleventh amendment immunity has been abrogated by Congress. Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (quoting Dellmuth v. Muth, 491 U.S. 223, 228, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989)); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) ("Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute."). Congress did not exercise its power to abrogate a state's Eleventh Amendment immunity in enacting the ADEA. Kimel, 528 U.S. at 91.

Plaintiff does not dispute that congress did not waive Eleventh Amendment immunity with respect to the ADEA. However, she argues that a jail is not entitled to immunity. As discussed

above, the Dillon County Sheriff's Office is the proper Defendant in this action. The Eleventh Amendment extends not only to the States but also to state agencies and organizations that function as an "arm of the state." Mt. Healthy City School Dist. Bd. of Educ'n v. Doyle, 429 U.S. 274, 280 (1977). The Dillon County Sheriff's Office is an arm of the state. Cromer v. Brown, 88 F.3d 1315, 1331-32 (4th Cir. 1996); Millmine v. County of Lexington, 2011 WL 182875, *5 (D.S.C. 2011) ("In South Carolina, a sheriff's department is an agency of the state . . . ."); Carroll v. Greenville County Sheriff's Dep't, 871 F.Supp. 844, 846 (D.S.C.1994) (holding that a suit against the sheriff's office is a suit against the state). Therefore, Plaintiff may not pursue her ADEA claim against the Dillon County Sheriff's Office in this court. Ramos v. Berkeley County, 2012 WL 5292895, *5 (D.S.C. 2012) ("Because the Court has already determined the Sheriff to be an arm of the State, the Court agrees with the magistrate judge that the Plaintiff may not pursue her ADA and ADEA claims against this Defendant in this Court.").

### D.     Title VII

Plaintiff's claim of discrimination based on sex falls under Title VII, which makes it "an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1).  "Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the [Equal Employment Opportunity Commission (EEOC)]." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.2000); see also 42 U.S.C. § 2000e–5(f)(1).  The EEOC must then decide whether it will bring a claim in federal court or if it will issue a "right-to-sue" letter to the claimant, "which letter is essential to initiation

of a private Title VII suit in federal court." Davis v. North Carolina Dep't of Corrections, 48 F.3d 134, 136–37 (4th Cir.1995). Upon receipt of the right to sue letter from the EEOC, Plaintiff has 90 days within which to file a civil action raising federal discrimination claims. 42 U.S.C. § 2000e–5(f)(1) and 29 U.S.C. § 626(e).

Plaintiff filed a Charge of Discrimination with both the South Carolina Human Affairs Commission (SCHAC) and the EEOC on December 4, 2012. Charge of Discrimination (Ex. 15 to Pl. Dep.). She received a Dismissal and Notice of Right to Sue letter from SCHAC on May 24, 2013. SCHAC Dismissal and Notice of Right to Sue (Ex. 17 to Pl. Dep.). The notice provides that "the Commission is unable to conclude, based upon the information obtained during its investigation, that there has been a violation of the Human Affairs Law, Section 1-13-10, et seq., of the SC Code of Laws of 1976, as amended." SCHAC Dismissal and Notice of Right to Sue. It further notifies Plaintiff that she has 120 days from the date of the issuance of the notice to pursue the charge further or her "right to sue under the human affairs law is lost." SCHAC Dismissal and Notice of Right to Sue. Plaintiff has not produced a copy of a right to sue letter from the EEOC and does not recall receiving one. Pl. Dep. 88-89. Defendant argues that Plaintiff has not exhausted her administrative remedies because she filed this action prior to receiving a right to sue letter from the EEOC and, if she did receive a right to sue letter from the EEOC, she fails to show that this action was timely filed because without the letter she cannot show that she filed the action within ninety days of its receipt. Plaintiff argues that she received a right to sue letter from the SCHAC and filed her action within 120 days of receipt of that letter, which she asserts is sufficient to exhaust her administrative remedies.

The Fourth Circuit has explained the road a claim of discrimination under Title VII must

travel before this court has jurisdiction over it:

> Before a federal court may assume jurisdiction over a claim under Title VII, . . . a claimant must exhaust the administrative procedures enumerated in 42 U.S.C. § 2000e-5(b), which include an investigation of the complaint and a determination by the EEOC as to whether "reasonable cause" exists to believe that the charge of discrimination is true. Additionally, when the alleged discrimination occurs in a state that has enacted a law "prohibiting the unlawful employment practice alleged" and has "establish[ed] or authoriz[ed] a State or local authority to grant or seek relief from such practice," Title VII provides that
>
>> no charge may be filed [with the EEOC] under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated.
>
> 42 U.S.C. § 2000e-5(c). . . .
>
> Section 2000e-5(c) "has resulted in EEOC's development of a referral and deferral system," [New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 64, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980)], in which the EEOC delays processing a Title VII claim while the complainant first proceeds under state law in a state forum. In cases like that brought by Davis, where "a charge is filed with the EEOC prior to exhaustion of state or local remedies, the Commission refers the complaint to the appropriate local agency." Id. During the sixty day period in which the state conducts "proceedings ... under the State or local law," 42 U.S.C. § 2000e-5(c), "[t]he EEOC holds the complaint in 'suspended animation.' " New York Gaslight, 447 U.S. at 64, 100 S.Ct. at 2031 (quoting Love v. Pullman, 404 U.S. 522, 526, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972)). The purpose of this "first hiatus is ... to give state administrative agencies an opportunity to invoke state rules of law." Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 825, 110 S.Ct. 1566, 1569, 108 L.Ed.2d 834 (1990).
>
> . . . [I]f the complainant initially filed the complaint with the EEOC, which then referred it to the state, "the EEOC automatically [will] assume[ ] concurrent jurisdiction of the complaint" when state proceedings terminate, or upon "expiration of the 60-day deferral period, whichever comes first." New York Gaslight, 447 U.S. at 64, 100 S.Ct. at 2031.
>
> Even at this point, however, Title VII still prohibits a claimant from invoking the jurisdiction of the federal courts. As the Supreme Court has recognized, "action by the EEOC ... is a predicate for litigation based on the federal statute." Yellow Freight Sys., 494 U.S. at 825, 110 S.Ct. at 1569.

> Section 2000e-5(b) specifies the actions the EEOC must take before a private litigant may bring a Title VII claim in federal court. Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). That section provides that a federal discrimination claim brought by a private party cannot be heard by a federal district court until the EEOC has conducted an investigation and determined the validity of the claim. Further, the section requires that the EEOC decide whether the agency will bring the claim in federal court or whether the complainant will be issued a right-to-sue letter, which letter is essential to initiation of a private Title VII suit in federal court. 42 U.S.C. § 2000e-5(b); id. § 2000e-5(f)(1); see also Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 104-05 n. 12, 99 S.Ct. 1601, 1610 n. 12, 60 L.Ed.2d 66 ("[A] complainant ... must obtain a 'right-to-sue' letter before proceeding in federal court.").

Davis v. North Carolina Dep't of Correction, 48 F.3d 134, 137-38 (4th Cir. 1995) (emphasis added).

It is undisputed that South Carolina is a deferral state. In addition, this court has previously assumed the existence of a workshare agreement between the EEOC and the SCHAC pursuant to such that a filing with SCHAC is sufficient for a filing with the EEOC, see, e.g. Brown v. Berkeley County School Dist., 339 F. Supp. 2d 715, 721 n.3 (D.S.C. 2004); Grooms v. Mobay Chem. Corp., 861 F. Supp. 497, 503 & n.7 (D.S.C.1991), and the charge of discrimination form completed by Plaintiff supports that assumption by allowing the complainant to check a box indicating whether she would like the charge filed with both the SCHAC and the EEOC. However, Plaintiff fails to point to any authority that allows the SCHAC to assume the EEOC's statutory duty to conduct an investigation and determine whether "reasonable cause" exists to believe a violation of federal law has occurred, although § 2000e-5(b) does direct the EEOC to "accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law" in making its determination whether reasonable cause exists to believe that an employer has violated Title VII. 42 U.S.C. § 2000e-5(b).

As the Supreme Court has recognized, "action by the EEOC ... is a predicate for litigation

based on the federal statute." Yellow Freight Sys., 494 U.S. at 825, 110 S.Ct. at 1569. Courts have held that receipt of a right to sue letter from the EEOC is the exclusive mechanism for commencing the federal 90-day filing period, and receipt of a state agency letter would not trigger the federal period. See Vielma v. Eureka Co., 218 F.3d 458, 466 (5th Cir. 2000) (noting that "receipt of a [Texas agency] letter would not trigger the analogous EEOC ninety-day filing period"); Saylor v. Delaware Dept. of Health and Social Services, Div. of Child Support Enforcement, 569 F.Supp.2d 420 (D.Del. 2008) (holding that although employee received right to sue letter from Delaware Department of Labor, and thus could bring discrimination action against employer in state court, there was no evidence that employee received right to sue letter from EEOC, as required to bring Title VII action against employer in federal court); see also Daoud v. City of Wilmington, 894 F.Supp.2d 544, (D. Del. 2012) (finding employee had not exhausted his administrative remedies as to Title VII and ADA claims, where EEOC had not issued a right to sue letter); Bulls v. Holmes, 403 F.Supp. 475 (E.D.Va. 1975) (holding that to maintain action under Title VII, a plaintiff must show that he has filed timely charge of employment discrimination with the EEOC has received and timely acted upon proper statutory notice of right to sue).

Plaintiff's present action is based upon alleged violations of federal law. She fails to show that she has received a right to sue letter from the EEOC, which is a precondition to bringing an action in this court. Thus, she fails to show that she has exhausted her administrative remedies with respect to her Title VII cause of action and summary judgment is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's Motion to Amend (Document # 24) be denied, Defendant's Motion for Summary Judgment (Document # 20) be


granted and this case be dismissed in its entirety.

                                               s/Thomas E. Rogers, III
                                              Thomas E. Rogers, III
                                              United States Magistrate Judge

January 13, 2015
Florence, South Carolina